## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| HAROLD F. EGGERS | § | |
|     Debtor | § | |
| ———————————————————— | § | |
| HAROLD F. EGGERS | § | |
|     Appellant | § | |
| | § | |
| v. | § | CASE NO. 1:10-cv-00341-SS |
| | § | |
| JOHN TOWNES VAN ZANDT, II, | § | |
| WILLIAM VINCENT VAN ZANDT, | § | |
| KBV, a minor, by and through her | § | |
| next friend, Jeanene Van Zandt, | § | |
| Jeanene Van Zandt and TVZ Records, | § | |
| LLC | § | |
|     Appellees | § | |

## <u>APPELLANT'S BRIEF</u>

**Stephen W. Sather**
**Barbara M. Barron**
**Barron & Newburger, P.C.**
**1212 Guadalupe, #104**
**Austin, TX  78701**
**(512) 476-9103**
**Fax:  (512) 476-9253**

**Attorneys for Appellant**

# Table of Contents

Statement of Appellate Jurisdiction................................................................2

Statement of the Issues and Standard of Review ...........................................2

Statement of the Case ....................................................................................3

  A.  The Settlement Agreement ....................................................................3

  B.  The Lawsuit ..........................................................................................5

  C.  The Bankruptcy and the Judgment ......................................................5

  D.  The Second Motion for Relief from Automatic Stay...........................6

Argument .......................................................................................................7

  A.  The Court's Factual Findings Were Clearly Erroneous..............................7

  B.  Recoupment, Like Set-Off, Requires Identity of Parties.............................10

  C.  The Obligations Arose From Different Transactions...................................13

Conclusion .....................................................................................................17

CERTIFICATE OF SERVICE........................................................................18

**Appendix**

    **A.**    **Order Granting Van Zandt Parties' Second Motion for Relief From Stay**

    **B.**    **Judgment (Movants' Ex. 1 from Bankruptcy Hearing)**

    **C.**    **Royalty Statements (Movants' Ex. 2 from Bankruptcy Hearing)**

    **D.**    **Copyright Assignment (Movants' Ex. 3 from Bankruptcy Hearing)**

# LIST OF AUTHORITIES

**Cases**

*Matter of Gasmark*, 193 F.3d 371 (5th Cir. 1999)............................. 11, 12, 16

*In re2*, 896 F.2d 176 (5th Cir. 1990)........................................................ 11, 12

*Matter of Kosadnar*, 157 F.3d 1011 (5th Cir. 1998) ..................................... 11

*Matter of Luongo*, 259 F.3d 323 (5th Cir. 2001)........................................... 12

*In re National Gypsum*, 208 F.3d 498 (5th Cir. 2000) ...................................... 3

*Six Palms Music Corp. v. Quality Records*, 214 B.R. 902, 1997 U.S. Dist.
    LEXIS 20936 (E.D. Cal. 1997)........................................................................ 8

*In re Slater Health Center, Inc.*, 398 F.3d 98 (1st Cir. 2005) ................. 12, 13

*Matter of U.S. Abatement Corp.*, 79 F.3d 393 (5th Cir. 1996)............... 11, 12

**Statutes**

28 U.S.C. §158(a)(1)............................................................................................ 2

**Rules**

Fed.R.Bankr.P. 8002(a) ...................................................................................... 2

Fed.R.Bankr.P. 8013............................................................................................ 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| In Re: | § |
| HAROLD F. EGGERS | § |
|     Debtor | § |

_____

| | |
|---|---|
| HAROLD F. EGGERS | § |
|     Appellant | § |
| | § |
| v. | §   CASE NO. 1:10-cv-00341-SS |
| | § |
| JOHN TOWNES VAN ZANDT, II, | § |
| WILLIAM VINCENT VAN ZANDT, | § |
| KBV, a minor, by and through her | § |
| next friend, Jeanene Van Zandt, | § |
| Jeanene Van Zandt and TVZ Records, | § |
| LLC | § |
|     Appellees | § |

## APPELLANT'S BRIEF

TO THE HONORABLE U.S. DISTRICT JUDGE:

COMES NOW, Harold F. Eggers, and submits this Appellant's Brief and would show as follows:

This appeal involves the equitable doctrine of recoupment. Harold F. Eggers ("Eggers" or the "Debtor") owes money to John Townes Van Zandt, II, William Vincent Van Zandt, KBV, a minor and Jeanene Van Zandt (the "Van Zandt Parties") pursuant to a state court judgment entered during the bankruptcy proceeding. TVZ Records, LLC owed money to Harold Eggers

for royalties.    The Bankruptcy Court allowed the Van Zandt Parties to recoup their damages out of the funds which TVZ owed to Eggers.    Under the law in the Fifth Circuit, recoupment requires a single transaction between the same parties.    In this case, there were different sets of parties and different transactions.   As a result, the Bankruptcy Court erred in allowing recoupment.

## Statement of Appellate Jurisdiction

The Court has jurisdiction under 28 U.S.C. §158(a) (1) for the reason that this is an appeal from a final order of the United States Bankruptcy Court. The appeal was timely filed.    The Bankruptcy Court entered its Order Granting Van Zandt Parties' Second Motion for Relief from Stay on April 30, 2010.    The Debtor filed his Notice of Appeal on May 4, 2010.    Under Fed.R.Bankr.P. 8002(a), a notice of appeal is timely if filed within fourteen (14) days after entry of the order being appealed.    In this case, the Notice of Appeal was filed four days after entry of the order.

## Statement of the Issues and Standard of Review

The issue in this case is:

Whether the Bankruptcy Court erred in finding that recoupment was permissible with regard to the Judgment in favor of the Van Zandt Parties and the royalty obligations owed by TVZ Records, LLC?

The Court reviews the Bankruptcy Court's legal conclusions on a *de*

*novo* basis.  *In re National Gypsum*, 208 F.3d 498 (5th Cir. 2000).  Factual findings "shall not be set aside unless clearly erroneous."  Fed.R.Bankr.P. 8013.  Appellant contends that the issues on this appeal are primarily legal conclusions which may be reviewed on a *de novo* basis.

## Statement of the Case

**A.     The Settlement Agreement**

This case arises out of a Compromise Settlement Agreement and Full and Final Release of All Claims dated February 22, 2006 between the Van Zandt Parties and Eggers ("Settlement Agreement").     (The Settlement Agreement is included in the Appendix to this Brief as part of the Judgment).  The Settlement Agreement arose from a prior action pending in United States District Court between three of the Van Zandt Parties and Eggers, Case No. A:05-CA-307-SS, *John Townes Van Zandt, II, et al vs. Harold F. Eggers, Jr.* ("Original Action").  TVZ Records was not a party to either the Original Action or the Settlement Agreement.

The Settlement Agreement provided that Eggers turn over his catalog of Townes Van Zandt recordings to the Van Zandt Parties in exchange for the right to release a compilation album of Townes Van Zandt recordings as well as receiving or retaining certain rights in copyrights and a percentage of the net proceeds of various recordings.   The Settlement Agreement consisted of

multiple related transactions, including the following:

      1.    Eggers was required to terminate the licenses for distribution of a group of records known as the Five Albums.   The Van Zandt Parties and Eggers were each to receive 50% of the Net Proceeds from the Five Albums until the existing licenses which were being terminated, at which point Eggers' share would drop to 25%.   (Para. 3(e)).

      2.    Eggers was required to terminate the licenses for distribution of a group of records known as the Seven Albums.  The Van Zandt Parties and Eggers were each to receive 50% of the Net Proceeds from the Seven Albums.  TVZ Records was given the right to re-license the Seven Albums "if TVZ Records can demonstrate the ability (by entering into a distribution agreement with a reputable /major distributor comparable to the current distributors) to generate more revenue for the sound record rights than was generated previously under the licenses issued to the Seven Albums Licensees."    The Settlement Agreement also provided that, "Eggers retains 50% copyright ownership to the Seven Albums, subject to the restrictions set forth in this paragraph." (Para. 3(f)).

      3.    Eggers was authorized to select thirty (30) songs from his catalog of unreleased Townes Van Zandt recordings for inclusion in a compilation album to be titled On the Road Touring.  The tracks selected by Eggers were to be judged by an Expert selected under the Settlement Agreement to determine "whether the recordings represented an enhancement of the value of, and a positive contribution to, the Townes catalog."  Once quality approval was obtained, TVZ Records was to release the compilation album no later than December 31, 2008.  The Settlement Agreement provided that "Eggers retains 50% copyright ownership in On the Road Touring, subject to the restrictions set forth in this paragraph." (Para. 3(g).

      4.    Once On the Road Touring was delivered to TVZ Records, Eggers was to deliver "the remainder of Eggers' catalog of Townes masters" to TVZ Records.  If this group of recordings, designated as the "Residual Sound Recordings" was commercially exploited, Eggers was to receive 25% of the Net Proceeds.  (Para. 3(h)).

      5.    Upon the delivery of the Residual Sound Recordings,

Eggers was to relinquish his copyright ownership in those specific recordings, except for his 25% Net Proceeds interest.  (Para. 3(h)(1)).

6.     The Settlement Agreement stated that "under no circumstances shall TVZ Records, the Van Zandt Parties, or their successors or assigns be empowered to alienate from Eggers or his successors the rights described above. . . ."  (Para. 3(h)(10)).

7.     Eggers agreed that in the event of a material breach, he would be liable for liquidated damages of $25,000 for each breach. (Para. 3(h)( 11)).

8.     The parties also executed mutual releases.   (Para. 4 and 5) and provided for dismissal of the Original Action.

## B.     The Lawsuit

The Van Zandt Parties filed suit against Harold Eggers in Case No. D-1-GN-06-001169 in the  Judicial District Court of Travis County (State Court Action) alleging breach of the Settlement Agreement.  Eggers filed a Third Party Complaint against TVZ Records.  TVZ counterclaimed for declaratory relief but did not assert any monetary claims against Eggers.

 After a jury trial, the jury found that Eggers had breached the Settlement Agreement and awarded damages in the amount of $100,000.

## C.     The Bankruptcy and the Judgment

 Eggers filed Chapter 13 bankruptcy on April 27, 2009.  The Van Zandt Parties filed a Motion for Relief from Automatic Stay to allow the State Court to enter a judgment.    The Bankruptcy Court granted this relief.

On December 15, 2009, the  Judicial District Court of Travis County

entered a Final Judgment in the State Court Action ("Judgment"). (The Judgment is included in the Appendix to this Brief).   The Judgment awarded the Van Zandt Parties $75,000.00 in damages (which was a reduction from the amount found by the jury), $16,907.53 in prejudgment interest and $150,000 in attorney's fees and post-judgment interest at the rate of 5% per annum.   The State Court declined to rule on the Van Zandt Parties request for offset or recoupment and stated that the parties were free to seek further relief in the Bankruptcy Court.

## D.   The Second Motion for Relief from Automatic Stay

On December 31, 2009, the Van Zandt Parties and TVZ Records filed a second Motion for Relief from Automatic Stay.  This Motion sought relief from the automatic stay in order to exercise a right of recoupment. Specifically, the Van Zandt Parties and TVZ Records sought to apply monies currently owed and to be owed from TVZ Records to Eggers against Eggers' obligation to the Van Zandt Parties under the Judgment.  The Debtor objected on the basis that, among other things, recoupment could not be allowed between non-mutual parties.  The Bankruptcy Court conducted a hearing on February 22, 2010.  The Bankruptcy Court took the matter under advisement.

On April 30, 2010, the Bankruptcy Court issued its Order Granting Van Zandt Parties' Second Motion for Relief from Stay.   (The Order is included in

the Appendix to this Brief).   The Bankruptcy Court found that under the
doctrine of recoupment, "Eggers and the estate have no equity in the royalties
because the royalties belong to the Van Zandt Parties pursuant to the Judgment
and to the . . . cases cited above."

The Debtor filed a timely Notice of Appeal on May 4, 2010.

## Argument

**A**.   **The Court's Factual Findings Were Clearly Erroneous**

While the facts in this case were largely undisputed, the Bankruptcy
Court's Opinion contains several major errors, which contributed to its
erroneous ruling.

   *1.*   *The Settlement Agreement Did Not Allow Recoupment of The*
          *Judgment Amounts*

The Bankruptcy Court found that:

> Pursuant to the Settlement Agreement, Perkins stated that Debtor
> does not get any of the royalties until all costs are recouped,
> including the costs under the Judgment.     Further, the Judgment
> is premised on Eggers' breach of contract and, as such, costs and
> damages under the Settlement Agreement are recoupable.

Order, p. 7.   This finding is clearly erroneous.       The best evidence of the
contents of the Settlement Agreement is its language.       The Settlement
Agreement states:

> In calculating Net Proceeds under this section 3(b)(3), TVZ
> Records shall be entitled to deduct from the gross revenue any
> commercially reasonable costs *incurred in the release and*

> *promotion of the sound recording masters*, including, but not limited to, distribution fees, manufacturing costs, mechanical license fees, marketing and promotion fees, administration fees of no more than 10% of the gross revenue, and any and all other fees and expenses customarily charged or incurred in the music industry. (emphasis added).

Settlement Agreement, p. 4.

The recoupment provision of the Settlement Agreement allows deduction of costs "incurred in the release and promotion of the sound recording masters."    It does not extend to a Judgment for liquidated damages in favor of a third party.    This case is similar to *Six Palms Music Corp. v. Quality Records*, 214 B.R. 902, 1997 U.S. Dist. LEXIS 20936 (E.D. Cal. 1997), where the District Court found that money advanced to an artist for legal fees did not fall within the category of recording costs which could be recouped.    As a result, the Court's factual finding is clearly erroneous.

2.    *The Van Zandt Parties Did Not Assign Their Rights Under the Judgment to TVZ*

The Bankruptcy Court found that:

> Perkins also noted that the Movants assigned their copyright interests to TVZ Records, LLC, prior to the judgment being rendered.   The assignment also includes all rights and remedies under the Movants' judgment.

Order, p. 7.

This finding is clearly erroneous because the assignment did not refer in any way to rights under the Judgment and because the Copyright Assignment

was executed *prior* to the Judgment.    The Copyright Assignment (which is included in the Appendix to this Brief) stated:

> Jeanene Van Zandt ("Jeanene") and John Townes Van Zandt, II, William Vincent Van Zandt and KBV, heirs of John Townes Van Zandt (the "Van Zandt Heirs"), for ten dollars and other good and valuable consideration, by this instrument confirm that they have assigned, granted and conveyed to TVZ Records, LLC, all of their right, title, and interest in and to the copyrights to the live sound recordings of Townes Van Zandt (the "Sound Recording Copyrights"), including without limitation, those live sound recordings (1) set out in the attached "Schedule B" and (2) referred to in the "Compromise and Settlement Agreement and Full and Final Release of All Claims" executed by the Van Zandt Heirs, Jeanene and Harold Eggers (the "Settlement Agreement"), and any and all rights related to the Sound Recording Copyrights arising under or related to the Settlement Agreement.

Movants' Ex. 3.    It was executed on October 21, 2008, to be effective as of February 24, 2006.

Pursuant to the Copyright Assignment, the Van Zandt Parties assigned two types of property to TVZ Records:  (1)  the copyrights which they owned; and (2) rights related to the Sound Recording Copyrights.    The suit brought by the Van Zandt Parties was a breach of contract action seeking liquidated damages under the Settlement Agreement.    It was not a suit for copyright infringement or any other claim related to the copyrights.    Furthermore, if the Van Zandt Parties had assigned their rights under the Settlement Agreement to TVZ Records, they would not have had standing to bring the State Court Action, since they would have lacked any interest in the cause of action.

*Because the Van Zandt Parties proceeded to trial in their own names, it is apparent that they did not believe that they had assigned their rights away.*   In the alternative, they committed a fraud upon the State Court by bringing suit on claims they did not own.

### 3.    *The Royalties Do Not Belong to the Van Zandt Parties*

The Court made a finding that:

> Eggers and the estate have not equity in the royalties because the royalties belong to the Van Zandt Parties pursuant to the Judgment and to the **Holford**, **ABCO** and **United States Abatement** cases cited above.

Order, p. 8.   While this finding is most likely intended as a conclusion of law, it is worth noting that the Judgment does not contain any language finding that the royalties belong to the Van Zandt Parties.  The Judgment awards damages and declaratory relief against Eggers.  However, the State Court expressly declined to rule upon the recoupment issue and did not grant any relief affecting Eggers' right to royalties.

## B.    Recoupment, Like Set-Off, Requires Identity of Parties

Both setoff and recoupment are doctrines which allow parties to reduce obligations between them.    Recoupment applies to claims arising out of the same transaction, while setoff involves unrelated claims.      However, both doctrines require that the parties be *identical*.      In this case, the Court committed clear error when it allowed recoupment between three sets of

different parties.

The Fifth Circuit has explained the recoupment doctrine as follows:

> Recoupment allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff *which arose out of the same transaction* to arrive at a just and proper liability on the plaintiff's claim.(citation omitted). In contrast, setoff involves a claim of the defendant against the plaintiff which arises out of a transaction which is different from that on which the plaintiff's claim is based. (citation omitted).

*In re Holford*, 896 F.2d 176, 178 (5th Cir. 1990).

> Recoupment originated as an equitable rule of joinder that allowed adjudication in one suit of two claims that would otherwise have to be brought separately under the common law forms of action.  In the bankruptcy context, the doctrine of recoupment has "evolved to permit a creditor to offset a claim that arises from the same transaction as the debtor's claim." Recoupment "allows a defendant to reduce the amount of a plaintiff's claim by asserting a claim against the plaintiff which arose out of the same transaction to arrive at a just and proper liability on the plaintiff's claim."  The doctrine operates "as an exception to the rule that all unsecured creditors of a bankrupt stand on equal footing for satisfaction [and] . . . sometimes allows particular creditors preference over others."

*Matter of U.S. Abatement Corp.*, 79 F.3d 393, 398 (5th Cir. 1996).   It has referred to recoupment as a "narrow doctrine."      *Matter of Gasmark*, 193 F.3d 371, 375 (5th Cir. 1999).

In the bankruptcy context, the main distinction between setoff and recoupment is that setoff is subject to the automatic stay, 11

U.S.C. §362(a)(7),  while recoupment is not, *Matter of Kosadnar*, 157 F.3d 1011 (5th Cir. 1998).      Recoupment receives preferential treatment under the Bankruptcy Code because it is part and parcel of the process of determining the amount owing to the bankruptcy estate.   Where monies owed to the estate are subject to a valid right of recoupment, the estate does not have an interest in those funds.    *In re Holford, supra*.      On the other hand, setoff involves separate transactions so that they do not create a single liability.

Both setoff and recoupment require identity of parties.    *Matter of Luongo*, 259 F.3d 323 (5th Cir. 2001)(setoff involves the same parties in the same capacity);  *In re Slater Health Center, Inc.*, 398 F.3d 98, 103 (1st Cir. 2005)(" a recoupment is C's deduction from C's debt to B based on B's debt to C arising out of the same transaction").

The Fifth Circuit has never allowed recoupment between non-identical parties.   It describes recoupment as arising between the plaintiff and the defendant, *In re Holford*, or between the debtor and the creditor, *Matter of U.S. Abatement Corp*.  Indeed, in *Gasmark*, the Fifth Circuit stated that "the fact that identical parties are engaged in transactions of a similar subject matter may not be enough to permit recoupment."   Thus, all recoupment claims must involve identical

parties, although not all transactions involving identical parties will qualify for recoupment.

In this case, the Bankruptcy Court erred when it allowed a three party recoupment.  Eggers owed money to the Van Zandt Parties pursuant to the Judgment, *but did not owe money to TVZ Records*. TVZ Records owed money to Eggers for royalties but the Van Zandt Parties did not owe money to Eggers.     The Court in *Slater Health Center* described recoupment as "C's deduction from C's debt to B based on B's debt to C arising out of the same transaction."

However, in this case, the Court allowed C's deduction from C's debt to B based on B's debt to A.  Allowing recoupment between multiple sets of parties has never been allowed and it was clear error for the Bankruptcy Court to allow it in this case.

## C.     The Obligations Arose From Different Transactions

An additional requirement for recoupment is that the claims arise out of the same transaction.  In this case, the record shows that there were different transactions.  Eggers owed money to the Van Zandt Parties because the jury found that Eggers had breached an agreement which imposed duties on him with regard to the Van Zandt Parties.  TVZ Records owed money to Eggers because it sold records in which Eggers had either a copyright interest or a net

proceeds interest.

The Settlement Agreement is composed of multiple transactions, which deal with three different groups of recordings:   The Five Albums, the Seven Albums and the Residual Sound Recordings.    The parties had different rights and obligations with regard to each group of recordings:

- The Five Albums:   Eggers was required to terminate the existing licenses for distribution of the Five Albums not later than December 31, 2008.   The Van Zandt Parties and Eggers were each to receive 50% of the Net Proceeds from the Five Albums until the existing licenses which were being terminated, at which point Eggers' share would drop to 25%.   (Para. 3(e)).

- The Seven Albums:        Eggers was required to terminate the licenses for distribution of the Seven Albums not later than December 31, 2008.   The Van Zandt Parties and Eggers were each to receive 50% of the Net Proceeds from the Seven Albums. TVZ Records was given the right to re-license the Seven Albums "if TVZ Records can demonstrate the ability (by entering into a distribution agreement with a reputable /major distributor comparable to the current distributors) to generate more revenue for the sound record rights than was generated previously under the licenses issued to the Seven Albums Licensees."        The Settlement Agreement also provided that, "Eggers retains 50% copyright ownership to the Seven Albums, subject to the restrictions set forth in this paragraph." (Para. 3(f)).

- The Residual Sound Recordings:

  o Eggers was authorized to select thirty (30) songs from his catalog of unreleased Townes Van Zandt recordings for inclusion in a compilation album to be titled On the Road Touring.  The tracks selected by Eggers were to be judged by an Expert selected under the Settlement Agreement to determine "whether the recordings represented an enhancement of the value of, and a positive contribution to,

the Townes catalog." Once quality approval was obtained, TVZ Records was to release the compilation album no later than December 31, 2008. The Settlement Agreement provided that "Eggers retains 50% copyright ownership in On the Road Touring, subject to the restrictions set forth in this paragraph." (Para. 3(g).

o Once On the Road Touring was delivered to TVZ Records, Eggers was to deliver "the remainder of Eggers' catalog of Townes masters" to TVZ Records. If this group of recordings, designated as the "Residual Sound Recordings" was commercially exploited, Eggers was to receive 25% of the Net Proceeds. (Para. 3(h)).

o Upon the delivery of the Residual Sound Recordings, Eggers was to relinquish his copyright ownership in those specific recordings, except for his 25% Net Proceeds interest. (Para. 3(h)(1)).

The obligations of the parties were to take place over different time periods. The Van Zandt Parties could perform their obligations of dismissing the pending lawsuit and executing the Settlement Agreement immediately. Eggers would be able to perform his obligations within a relatively short period of time. However, TVZ Records would have ongoing obligations for an indefinite period of time.

At the hearing in Bankruptcy Court, Movants' witness acknowledged that it would be impossible to determine what violations the jury found to be breach of contract. As a result, the only nexus between the breaches of contract and the royalties owed is that they are both discussed in the Settlement Agreement. The Fifth Circuit has held that "the fact that identical parties are

engaged in transactions of a similar subject matter may not be enough to permit recoupment." *Matter of Gasmark*, *supra.* Instead, it found that "(t)he obligations must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of the transaction without also meeting its obligations." *Gasmark*, at 374-75.

In the *Gasmark* case, the debtor and Southwest were parties to a contract for sale of gas. Prior to bankruptcy, Southwest purchased gas but did not pay for it. Immediately prior to and after the bankruptcy, the debtor became liable to Southwest for liquidated damages due to failure to deliver gas. The Fifth Circuit found that this was not the type of case which would permit recoupment.

> Our review of this record finds no inequities accruing to Southwest that are in any way comparable to the buyer who has overpaid the seller. In the absence of injury to Southwest or benefit or enrichment to Gasmark, we feel no equitable tug in Southwest's favor that supports application of the narrow doctrine of recoupment.

*Gasmark*, at 375. In this case, as in *Gasmark*, the liquidated damages clause allowed the other party to recover without proving a specific injury. Similarly, the record is devoid of any benefit which Eggers received from breaching the contract. In this case, just as in *Gasmark*, one party was liable because it received a benefit (in this case, TVZ Records, who profited from sales of records), while another

party failed to perform, but did not benefit (in this case, Eggers).    It would be inequitable to allow TVZ Records to retain the benefits which it received from sales of records based on Eggers default of his obligations to third parties.

## Conclusion

This is a case where the Bankruptcy Court failed to follow controlling Fifth Circuit precedent.   The Fifth Circuit requires, at a minimum, that there be identity of parties before recoupment is allowed.    Even then, the fact that there are identical parties and similar subject matter is not enough.    There must be a single, integrated transaction so that failure to apply the doctrine would result in one party being unjustly enriched.    In this case, there were different parties and different transactions.   As a result, recoupment does not apply and the Bankruptcy Court's order must be reversed.

WHEREFORE, PREMISES CONSIDERED, Appellant Harold F. Eggers prays that the court reverse the order of the United States Bankruptcy Court and for such other and further relief, at law and in equity, to which he may be entitled.

Respectfully submitted,

**BARRON & NEWBURGER, P.C**
1212 Guadalupe Street, Suite 104
Austin, Texas 78701
(512) 476-9103
(512) 476-9253 (Facsimile)

/s/ Stephen W. Sather

By: _____

Barbara M. Barron
Texas Bar No:  01817300
bbarron@bnpclaw.com
Stephen W. Sather
Texas Bar No:  17657520
ssather@bnpclaw.com

ATTORNEYS FOR HAROLD F. EGGERS

## CERTIFICATE OF SERVICE

By my signature blow, I hereby certify that a true and correct copy of the foregoing was sent via first class mail, postage prepaid, this 16th day of June 2010, to the following:

Kevin W. Brown
Lisa C. Fancher
Fritz, Byrne, Head & Harrison, LLP
98 San Jacinto, Suite 2000
Austin, TX  78701

*/s/Stephen W. Sather*
Stephen W. Sather